v. Calhoun & Overland Bond & Investment Corp. v. Vinascio or Zico, 22-1804. Our procedure is as follows. The appellant will have the first opportunity for 10 to 15 minutes to present their case in all probability uninterrupted unless you get tangent away from everything that's relevant. And then the appellee will have the same opportunity. And then the closing. So you have before you Justice Aurelia Puchinski, Justice Terry Levin, and Justice James Fitzgerald Smith. With that, the appellant may proceed. Thank you, Your Honor. Good afternoon. My name is Michael Marano and I represent Overland Bond, the appellate. Excuse me. I understand. Just one thing before you go. Sure. I want to clear that you, you've agreed in on both sides that Section 1, you agreed that all sections of the contract you agreed to. So keep that in mind when you're arguing. Sure. So, I understand that a lot of people don't like arbitration. And, you know, I honestly, I'm not a big fan myself, but arbitration is now the law of the land. The Federal Arbitration Act governs this particular arbitration provision. And the U.S. Supreme Court has made clear that in any dispute about arbitration, arbitrability, any dispute or any doubt concerning the scope of arbitrable issues has to be resolved in favor of arbitration. Whether the issue concerns construction of the arbitration provision or allegations of waiver or delay, things like that. We start with that premise. There's two issues raised in this particular case. One concerns the construction of the arbitration provision. The second concerns waiver. With respect to construction, the question is whether the arbitration provision here allowed Oberlin Bond to choose between arbitration and litigation to resolve its claims against the defendants, or whether its decision to litigate its claims required it to resolve all claims in litigation. The question of waiver simply raises the issue of whether Oberlin took some action in the litigation that was inconsistent with its right to arbitrate by submitting substantial or substantive issues to the court for decision. With respect to the contract construction issue, whether Oberlin agreed to litigate its disputes or whether it agreed to litigate all disputes by electing litigation, that provision has to be interpreted like any contract provision. That's where you've got to look in both Section 2 and 3 in conjunction after you've agreed in Section 1 that it all applies in the contract. So be very careful where you're going now. Okay. So, what I'm saying is that our Supreme Court has said in Clanton v. Oak Brook Health Care, which affirmed Judge Buczynski's decision, that the terms of an arbitration agreement are determined using ordinary contract principles. And as with any contract, what you're trying to do is determine and give effect to the intent of the parties. What did the parties intend when they entered into this agreement? In the first place, obviously, you look to determine the party's intent is the language of the contract. And there's been no argument here that the contract is ambiguous in any respect. So what does the arbitration agreement say? It says in Section 2 that all claims and counterclaims are subject to arbitration except for as provided in Section 3. So you start with the premise that everything's subject to arbitration, but there's an exception in Section 3. What Section 3 says is that the seller and its assignee reserve their right to choose between arbitration or litigation for the resolution of their disputes that arise out of the contract. The word there, as used in Section 3, is a possessive pronoun. And to determine what is meant by their, you look at the antecedent to the pronoun. So who is the pronoun? To whom are they referring to when they say their? And in the contract, the antecedent is the seller and its assignee. Under the contract, the seller is car credit, the entity that sold the vehicle for the defendants. And its assignee is Oberlin Bond, the plaintiff in this case, to whom the contract was assigned. So giving meaning, the normal meaning for the word there, as used in Section 3, means it's car credit and Oberlin's right to choose between litigation or arbitration to resolve their disputes with the defendants. You can't read Section 3 to say that by agreeing to resolve their disputes, they were agreeing to resolve or litigate all disputes, or the party's disputes, or the defendant's disputes. A fair, reasonable reading of Section 3 is that they elected litigation to resolve their disputes with the defendant, their disputes with the defendant's default in making payments under the retail installment contract. So that's all that Section 3 says. I think it's very straightforward, and I don't think you can read it, considering that any contract interpretation has to be read in favor of arbitration. Now, there's been a number of cases that we cited that where courts have recognized that parties can structure their arbitration agreements in such a way that one party is bound to arbitrate their disputes, while another party is bound to arbitrate their disputes. While another party isn't necessarily obligated to litigate or arbitrate its disputes. We cited Tortorello v. Gerald Neeson. That's a second district case, 2008. It's almost identical facts to this situation. It's a car dealership. It sold a car to a consumer. The car dealer agreement, the retail installment contract, had a provision in it requiring arbitration. But it said that with respect to disputes that the dealer has with regard to collection of the amounts owed under the contract, the dealer could proceed in litigation, but that any disputes that the customer had had to be subject to arbitration. In that case, the customer argued, well, there's no mutuality of contracts. And the court said, no, you don't need, you know, you don't have to have the exact same arbitration provision affecting both sides. As long as there was adequate consideration for the contract, the way the party structured their arbitration agreement was up to them. And the consideration for any retail installment contract, auto purchase contract, is the consideration of the vehicle being provided to the purchaser and the consideration agreed to be paid by the purchaser. So there was no finding of lack of mutuality. And the second district enforced that provision and required the parties to arbitrate. The second case, Illinois case we cited, was Bishop versus We Care Development. That's a First District 2000 case. Similar facts, the arbitration provisions in franchise agreements allowed the franchisor to pursue eviction actions in court if the franchisee defaulted on their lease, but required the franchisee to litigate any issues or disputes with the franchisor to resolve them in arbitration. And again, this court, First District, upheld that and again, addressed the mutuality of obligation and said, no, as long as the contract supports, there's consideration supporting the overall contract, the way the parties structured their arbitration agreement is fine. Arbitration agreements are simply a matter of contract. And the parties are free to structure their contract in any way they see fit. And that's what happened in this case. As Council points out, my client's business is providing vehicles to people that don't have access to normal credit. They can't build it, they don't have banking relationships, they don't have lending facilities where they can borrow money to lend cars. What we do is we make vehicles available to those people and we finance the purchases through our affiliated company, Oberlin. We finance the purchases for these people. So we're the seller and the finance company, two different corporations, but we provide that service to these people. We've been in business for 63 years. You don't have to go through that, Council. Stick to the law. Sure. So we've structured, we do have a lot of litigation because we take high risk customers that don't have good credit ratings. And so, yeah, we're involved in lawsuits and the easier way to prosecute defaults, which is 99.9% of what we do is to go through courts. And that's what we do. But if there's a counterclaim, we bargained and it's part of our contract that those will be arbitrated. So on the issue of contract construction, we believe that it's clear. We agreed that we would have an option to either litigate or arbitrate our disputes. But the obligation for the defendant when they have a dispute is to go to arbitration. And so that's why arbitration should be enforced in this case. Now, the second issue that's raised on appeal is whether we waived our right to arbitration. And again, I think. Justice Pachinksi's decision in Clanton versus Oak Brook Terrace resolves that. As that court held, the crucial inquiry when looking at a waiver is whether the party is acting inconsistently with its right to arbitrate. And you act inconsistently with your right to arbitrate by submitting an arbitrable issue to the court for resolution. Also Howard, you seem to be going in conflict with yourself. You agreed that Section 1, 2 and 3 are the contract and that the terms therein under all stay together. Now you're trying to separate 2 and 3 apart. But if you look at 2 and 3, you have to read them together. And if you read them together, you made the decision, you chose to litigate. Once you made that decision, you closed the door on Section 2 and 3. No, I disagree. What we made the decision under Section 3 is to litigate our disputes. It says we have the right to litigate, to select either arbitration or litigation to litigate their disputes, our disputes. So our dispute is you didn't pay your contract, you didn't pay your car payment, you defaulted on your contract. That's our dispute with the defendants. Their dispute with us is they said we illegally used a vehicle termination switch, which is totally different. That's their dispute with us. Section 3 doesn't say by agreeing to litigate our disputes, we also have to agree to litigate their disputes. That's the difference. The language in Section 3 specifically says for the resolution of their disputes. I don't understand how you're trying to avoid that language. Their dispute, well, who's there? And that's where you have to look at their is a possessive pronoun. It refers to the people identified in the clause, which is the seller and its assignee, which is car credit and overland bond. Their disputes. That's what it says. You just take these car owners out of the equation there. They're not part of the there. They're not part of the there. You can't read it to say there. First of all, Section 3. Trust me, some people can read it that way. Well, I don't agree. It's a possessive pronoun. A possessive pronoun, you have to look at the antecedent, who is there talking about. And in that clause, there's only 2 people mentioned seller and assignee. You told us a few minutes ago that you don't like arbitration. But in a situation like this, arbitration is a little bit easier on the car owners as opposed to your client, right? In terms of the financial. Oh, you mean if they elected? Yeah, sure. The arbitration that proceeds under here is very favorable to the car purchaser. Because it's under the consumer provisions of the American Arbitration Act, which limits their exposure for fees. Technically, it reduces the cost and expense if you think arbitration reduces cost and expense. But again, just they're not looking at arbitration. They want to go to court. And that's what they're looking for. So they're arguing that we should have to incur the expense of court to resolve our disputes. But the provision that we're talking about that we have to focus on says our disputes, their disputes, the seller and the assignee's disputes, they have the right to elect between arbitration and litigation and to resolve their disputes. OK, but what you're saying, though, is that you get the combo platter. You can go through court, you know, mess around in court for 16 months. And then, you know, if something else pops up, we'll just arbitrate that part of it. You can do the combo platter, right? We have the option. We filed the suit. So we have the option at the beginning where to go. OK, what happens later? You know, that's up to the defendants. In this case, they filed a counterclaim. OK, even if we agree with the language in this, that they are in this Section 3. T.H.E.I.R. refers exclusively to overland and car credit. Once it's a dispute that's in litigation, dispute is a wider frame of reference than claim or counterclaim. Dispute involves the whole thing. So once you've chosen litigation, which you've acknowledged is not as favorable to the car buyer, and that's why you chose litigation, because you're going to get a better deal and more money out of it as the car seller. Once you've chosen litigation, the whole dispute then is in court. And one could easily say dispute. They could have chosen to use claim or counterclaim in this Section 3, but they didn't. They used a different word, dispute. And dispute is wider than claim or counterclaim. It includes the entire lawsuit. I disagree, Your Honor, because it also says in that same clause, their dispute. OK, so their dispute is their dispute with the defendants. It doesn't say all disputes. If you read it to say that, then what is the meaning of Section 2? Section 2 would be meaningless. Section 3 would then govern everything because our client would have the right to select arbitration or litigation, and all disputes would have to be resolved subject to their whim, whatever they decide to do. Section 2 is meaningless. I'm sorry, counsel, I don't agree with that. I think that Section 3 says the first step is for Overland and car seller to decide whether they want to arbitrate or go to court. Once they've made that decision, they're in court for the dispute and the entire dispute, not just a half of it, but the whole dispute. I disagree because then you have to ignore the word their dispute. It doesn't say the dispute. It says their dispute. Even if we agreed that their dispute means the car seller and Overland, you've still got to connect it to the word dispute, which is different than claims and counterclaims. It's a broader concept. It means everything that's in court. Would you expect to go to court and have only one side of an issue presented before the judge? Wouldn't the judge have to listen to the other side, the buyers? And if they raise a counterclaim or if they raise a defense, are you saying that their defense can't be heard in court, that it has to go back to arbitration? No, nobody can say that. Once it's in court, it's in court. It's part of the dispute. When we filed the case, the only dispute that existed, the only dispute that we had the right to make a decision about, was the dispute about the default in payment. Well, what if there's a defense? The judge has to listen to the other side. The defense to the dispute in payment certainly can be raised, Your Honor. The defense to the dispute in payment can be raised. And in this case, there's a counterclaim. A counterclaim based on unrelated facts. Not unrelated. It's not unrelated at all. It's whether or not there's a kill switch, which is a sort of sneaky way to repossess the car, which goes to whether or not Overland and Cart Credit have the right to sneakily repossess the car by a kill switch instead of going through the regular routine motions to repossess a car. So it's not separate. It's the same thing. It's the same case. Well, Your Honor, I don't think it's the same case. I think it's a separate counterclaim that they filed. Not something that we could possibly anticipate. Nothing that has ever come up before. It's completely out of the context that we've seen. I'm going to have to cut you guys off. We've gone for 28 minutes on this. I think we have a right to hear the other side now. I agree. You may proceed. Thank you, Your Honor. And if it may please the court, my name is Daniel Schneider. I'm an attorney at Legal Action Chicago, representing the appellees Tracy Calhoun and Vinancio Orozco. And I would like to address something opposing counsel said off the bat. This concept that under the law of the United States and Illinois, all arbitration clause disputes are to be resolved in favor of arbitration. And, you know, this court, as recently as last year in the Bain v. Arun case, as well as the Supreme Court, U.S. Supreme Court, that is, in the 2022 Morgan v. Sundance Inc. case, has clearly said this is not true. In fact, as opposing counsel separately acknowledge, arbitration clauses are to be viewed and interpreted on equal footing with every other type of contractual provision. Whether or not this creates tension with earlier cases talking about arbitration is an issue to be resolved later. But the point is that the arbitration clause here is to be looked at like any other contract. Now, the reason we're here, justices, is that Oberlin Bond sued my clients in the circuit court of Cook County and then waited 16 months to decide whether or not it wanted to move to compel arbitration. Based on a clause it had full notice of the very moment it filed the lawsuit, just as it filed several lawsuits beyond my clients that day and over 3,000 in the preceding five years. Now it wants out of its own agreement. But I would ask that this court uphold the decision of the circuit court, finding that Oberlin Bond's arbitration clause allowed it a capacious right to make one decision, to elect between litigation and arbitration to resolve its disputes. And that Oberlin Bond made that very choice by suing my clients. So I'm going to talk about the arbitration clause itself and then also address the waiver arguments that the parties have briefed on. I think the justices understand our point of view on this matter, that read correctly and fairly, Section 2 of the arbitration clause puts the potential claims and counterclaims that could be filed by the parties under matters that could be arbitrable. But there is an exclusion in Section 3 that says that Oberlin Bond, that is the assignee of Carr Credit Center, has the right to choose between arbitration and other legal or equitable proceedings for the resolutions of their disputes. Opposing counsel has made a lot of the phrase there. But I would also, as I believe was pointed out, focus on the term disputes. You know, in litigation in our society, much like with Tango, you need at least two parties to make it work. And disputes here encompasses more than just whatever Oberlin Bond brought to court. As was also pointed out, Section 2 refers to claims and counterclaims, as opposed to the language of Section 3, which refers to disputes. Clearly showing an intent by the drafting party, Oberlin Bond, to put any disputes between the parties in court, if it chooses to proceed in court, as it does on a near daily basis in Cook County. Opposing counsel made a comment that we hadn't raised an ambiguity argument in this case. And while we believe that the arbitration clause is clearly written in a way that takes this case out of arbitration, it should stay in the circuit court. We did actually make an ambiguity argument on page 7 of our appellate briefs and also in the circuit court below. So we believe that our clause is unambiguous, but if the court disagrees, it absolutely can and should find that the clause is ambiguous and should be construed against the assignee of the drafter. That is Oberlin Bond. Now, Oberlin Bond, assuming that it is able to rely on this arbitration clause, also fully waived its right to proceed with arbitration based on its conduct in this case. And the standard, as was noted, is whether or not a party engaged in conduct that is inconsistent with the right to arbitrate. That was stated in the Clanton v. Oakbrook health case. And the court is allowed to consider all of the relevant circumstances, including key whether a party submitted arbitrable issues to a court for decision. Now, it is important to get a little bit of context here about who Oberlin Bond is and what they do in order to understand the series of events that took place at the circuit court. So Oberlin Bond is the financial partner of Carr Credit Center. It is a subprime car loan financier and servicer. They use both physical repossession, where a car is retrieved… Counsel, we already know this and we read the brief, so get to the law and don't give us this background. Understood, Justice. I'll move on. So the lawsuit was filed and Oberlin Bond waited 16 months from the date that it filed suit to move to compel arbitration. That action at the outset is enough to create, at minimum, a strong presumption in favor of waiver. Oberlin Bond, throughout its brief, cites the Liberty Chevrolet v. Rainey case, itself relying on a Seventh Circuit decision from the 1990s called the Cabinet Tree. And those cases stand for the proposition that a party filing a lawsuit is an unmistakable decision to submit arbitrable issues to a court for decision. In some ways, there is nothing that better exemplifies doing so than filing a lawsuit, asking for a court to find another party liable and awarded damages, which is exactly what Oberlin Bond did here. But that was not all that happened. Oberlin Bond filed suit and waited for 16 months. In the meantime, it was ordered on four separate occasions to file a response to Ms. Calhoun's counterclaims and then Mr. Orozco's counterclaims. On two of those four instances, it blew the deadline and then asked for a retroactive extension of time to respond. The last two times, it didn't even bother. And in fact, the motion to compel arbitration- So again, you're getting off the path. I'll move on, Justice. The point I'm trying to make is that all of this conduct is completely inconsistent with having a right to arbitrate this dispute, filing a case and delaying for so long. And also, in the meantime, suing numerous other people who are potential class members in the proposed class action here. The last point I want to address is an argument that Oberlin Bond makes that whether or not it had the right to- whether or not it waived its right to arbitrate, it had that right revived down the line by my clients asking to reclaim their counterclaims as a joint proposed class action. And it cites no cases where a party has done that, Your Honor. But there is a standard, again, that has been not formally adopted in this district, but discussed in the second district. Liberty Chevrolet versus Rainey case and that Seventh Circuit cabinetry case. And if this court follows that, the standard is that a right to arbitrate that has been waived may be revived if something happens that so dramatically and drastically changes the nature of the litigation. Now, we think the arbitration clause here governs, but if the court does reach the waiver issue, nothing happened here that would have revived Oberlin Bond's right to arbitrate. Our clients' claims, as Justice Paczynski very, very accurately pointed out, are directly tied to the claims in the underlying action. And they're not just counterclaims, I would note, Your Honors. These are also equivalent affirmative defenses that were raised in response to the complaint because under Illinois's Motor Vehicle Code, which adopts Article 9 of the Uniform Commercial Code, a party's failure to follow the repossession provisions of state law can serve as an affirmative defense to a later lawsuit to recover the finance charge and other fines and fees. And so what Oberlin Bond is asking is to split up this case into multiple components and say that, well, the counterclaims that were brought are just very different. They raise this kill switch defense, but that's just not true. In fact, the repossession and the failure to conduct the repossession in a commercially reasonable manner relates both to our affirmative defenses and counterclaims. You just cannot separate the two without creating multiple cases because they are directly and deeply intertwined. Nothing that happened in this case revived Oberlin Bond's right to arbitrate. And I would also add that in many of the cases, if not all of the cases that Oberlin Bond relies on, the arbitration clauses there were far more specific and stringent. Again, counsel, you're waving, you're not sticking to your case. So close it out. Absolutely. I think I've made the points that I need to. The arbitration clause governs and the circuit court got this decision exactly right. If this court's disinclined to agree, Oberlin Bond's conduct absolutely waived its right to arbitrate and nothing that happened since the filing of this case revived its right to move the case to arbitration. Thank you. Okay, Michael, finish up. Okay, let me just address what I think the issue is that you're focused on. And that is the question of when the arbitration agreement says that Oberlin Bond has the right to select either to arbitrate or litigate its dispute. Does the word dispute encompass a counterclaim? And I would submit that a claim is not a dispute and a counterclaim is not a dispute. If we sued the defendants and they wanted to come in and defend against our claim and raise whatever issue they want to raise in response to our claim, that is not a separate counterclaim. It is not a separate claim. It is resolution of our dispute. But what is happening here, and we've cited cases that say a counterclaim is a separate action. It's not part of the original action. It's a separate claim as if you filed your own separate lawsuit. That's their dispute. That's the defendant's dispute. The dispute we put before the court was, did they default in making their payments? And do we have a right to recover the balance due? They can defend against that. They can raise any defense they want against that. I don't dispute that in the court, but when they raise their own claims, their separate claims, whether in this case it was a counterclaim or whether they filed a claim as an initial action, then they have to arbitrate that. There's no right for them to deny arbitration there. So that is our position on that. You can't read our right to litigate our dispute as saying that means that any counterclaim they filed, any claim they make is also subject to litigation. If you read the arbitration provision that way, Section 2 is meaningless because it means that we have the right to decide where to go and not all claims are arbitrable because we can decide where to go. And I think they have to be read consistently with each other. I think the intent of the parties, I think clearly Section 3 was intended. You can't fairly read Section 3 to say Section 2 doesn't mean anything because part credit and overland can decide where to litigate everything. That's not what the parties intended. That would make the whole reading of the two clauses inconsistent. So our bottom line position is when it says we have the right to resolve our disputes, their disputes in court or through arbitration, that's limited to the dispute we raise. But when, in this case, they file separate counterclaims, that's a separate claim, stands on its own, separate cause of action. They get affirmative, different affirmative relief. That is different and that is their dispute and that dispute under Section 2 has to be resolved by arbitration. Thank you. Any questions? Nope. All right. Thank you both. Thank you. Your briefs were interesting and entertaining. And your arguments, although diverse, are well stated. So we're going to have to go back and look at this more carefully. Thank you. Thank you, Your Honors. Thank you, Your Honors.